Robert J. Christy, Appellant *v.* David Allen Darr, Appellee.

David Allen Darr, Appellant *v.* Robert J. Christy, Appellee.

Argued October 3, 1983, before President Judge CRUMLISH, JR. and Judges BARRY and BARBIERI, sitting as a panel of three.

*Herbert L. Olivieri*, Chief, Tort Litigation Unit, with him *Frank J. Micale*, Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General, for appellant/appellee, Robert J. Christy.

*Alexander H. Lindsay, Jr.*, for appellee/appellant, David Allen Darr.

OPINION BY JUDGE BARRY, November 16, 1983:

These cross-appeals[1] result from an order dated July 16, 1982, of the Court of Common Pleas of Butler County which ordered entry of judgment on a verdict in favor of David Allen Darr (plaintiff) but refused to allow any delay damages under Pa. R.C.P. No. 238 (Rule 238).

---

[1] 42 Pa. C. S. §762(a) provides:

[T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:

(1) Commonwealth civil cases.—All civil actions or proceedings original jurisdiction of which is vested in another tribunal by virtue of any of the exceptions to Section 761(a)(1). . . .

On October 25, 1975, the plaintiff, his twin brother, Douglas, and three other friends drove from State College to Slippery Rock to visit a friend, Jill Gardner, who was attending school at Slippery Rock State College. The visitors carried a half-keg of beer to Ms. Gardner's dormitory room. Because of the noise, the campus police were called to investigate. Robert J. Christy (defendant), a campus police officer, was admitted to the dormitory room where the beer was located. When the defendant discovered that some of the people present were not twenty-one years of age, he began issuing citations for underage drinking. Defendant also told Ms. Gardner that she would have to come with him since the beer was found in her room. Plaintiff and his brother attempted to intercede on Ms. Gardner's behalf, explaining to Officer Christy that Ms. Gardner knew nothing about the beer and that they would accept responsibility for it being in her room. Although there was some dispute concerning plaintiff's actions at this point, there is no question that Officer Christy struck plaintiff in the chest

---

42 Pa. C. S. §761(a) provides:

The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

. . . . .

(iv) Actions or proceedings in trespass as to which the Commonwealth government enjoyed sovereign or other immunity.

Defendant Christy, as a campus police officer, is not an officer of the Commonwealth for purposes of jurisdiction since he performs no statewide policy making functions, (*Opie v. Glasgow, Inc.*, 30 Pa. Commonwealth Ct. 555, 375 A.2d 396 (1977)). Original jurisdiction, therefore, would never have been with this Court and jurisdiction for this appeal should properly be with the Superior Court by virtue of 42 Pa. C.S.A. §742. Nonetheless, since neither party, as appellee, has objected to this Court's jurisdiction, we will entertain this appeal. 42 Pa. C. S. §704(a), Pa. R.A.P. 741.

with his forearm, causing plaintiff to stagger backwards and strike his head on a piece of furniture in the room.

Plaintiff was first taken to the campus infirmary, as striking his head had left him dazed and disoriented. He was then taken to Grove City Hospital. The doctors there were informed that the plaintiff had had a malignant brain tumor removed in 1970, so plaintiff was immediately transferred to Mercy Hospital in Pittsburgh.

Immediately after the incident, plaintiff began experiencing severe headaches, double vision, severe loss of balance and complete loss of hearing in one ear. Plaintiff was diagnosed as having a severe concussion, problems with the muscles and nerves relating to the eyes and hearing loss. The treating physicians also discovered that a ventriculoatrial shunt placed in plaintiff's skull following removal of the brain tumor in 1970 was malfunctioning.[2] Plaintiff remained hospitalized for approximately two weeks.

On March 14, 1977, plaintiff filed a complaint in trespass, alleging that the defendant had intentionally struck the plaintiff with unusual force, thereby causing the aforementioned injuries. Alternatively, plaintiff alleged that Officer Christy had been either negligent or grossly negligent. Plaintiff sought both compensatory and punitive damages. The jury found for plaintiff and awarded him $100,000 in compensatory damages but refused to award punitive damages. Subsequently, the defendant filed timely post-verdict motions seeking judgment n.o.v. or a new trial. Plaintiff filed a timely petition to award delay damages pursuant to Pa. R.C.P. No. 238. The trial court denied

---

[2] The purpose of the shunt is to allow the normal flow of fluids in the area of the brain where that flow is obstructed by tumor or swelling incident to surgery.

358

both defendant's post-verdict motions and plaintiff's petition for delay damages. Both parties appealed.

Officer Christy first argues that the trial court erred in refusing to exclude evidence of both plaintiff's malfunctioning shunt and brain tumor. In defendant's view, allowing references to these two problems was an improper attempt to garner sympathy for plaintiff from the jury to the extreme prejudice of defendant. We do not agree.

Dr. George H. Gray, a neurosurgeon, testified on plaintiff's behalf. In his testimony, he described all of the aforementioned problems from which plaintiff was suffering. Dr. Gray testified that, to a reasonable degree of medical certainty, it was his opinion the concussion, double vision and loss of hearing were all the direct result of the blow to plaintiff's head which occurred when Officer Christy pushed plaintiff. Dr. Gray also testified that he could not state with a reasonable degree of medical certainty that the trauma caused the shunt to malfunction. We do not believe that the admission of this testimony was error.

While there always exists the possibility that a past medical history, unrelated to the lawsuit at issue, may generate sympathy for a plaintiff, a trial court's paramount concern is to allow a jury to hear all evidence relevant to the issue being decided, excluding only that evidence which is unduly prejudicial. Plaintiff argues, and quite persuasively in our view, that exclusion of the questioned testimony could well have resulted in a larger verdict for plaintiff, since a jury being unaware of the pre-existing problems could reasonably have concluded that all of the plaintiff's injuries and symptoms were caused by the incident in question. Any possibility of prejudice is thus counterbalanced by the need to give a jury the entire picture so that it could properly decide to what extent plaintiff's injuries were caused by the complained of incident.

Defendant next makes a two-pronged argument concerning the testimony of Dr. Gray about plaintiff's double vision and loss of hearing. First, defendant argues that Dr. Gray, a neurosurgeon, should not have been allowed to testify concerning these problems outside his specialty field. Defendant further complains that Dr. Gray's testimony about the auditory and opthomological problems was based on other expert's reports which were neither in evidence nor subject to cross-examination. We find no merit to either contention.

> Our Supreme Court has stated that "the qualification of an expert witness is a matter which is within the discretion of the trial court . . ." Abbot v. Onopiuk, 437 Pa. 412, 421, 263 A.2d 881, 885 (1970). Duffy v. National Janitorial Services, Inc., 429 Pa. 334, 337, 240 A.2d 527, 529 (1968). "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert." Ragan v. Steen, 229 Pa. Super. 515, 331 A.2d 724 (1974). See Steele v. Shepperd, 411 Pa. 481, 483, 192 A.2d 397, 398 (1963).

*Kravinsky v. Glover,* 263 Pa. Superior Ct. 8, 20, 396 A.2d 1349, 1355 (1979). In the instant case, Dr. Gray as a neurosurgeon would have to have specialized knowledge concerning auditory and opthomological functions as those functions are closely related to a neurosurgeon's area of expertise. We do not believe that the trial court erred in allowing Dr. Gray's testimony.

Furthermore, allowing Dr. Gray to express an opinion based on reports of other physicians not in evidence that plaintiff's auditory and opthomological problems were caused by the trauma was proper. As the Supreme Court stated when first sanctioning such testimony:

In Pennsylvania, our cases have heretofore ruled that an expert may not state a conclusion which is based on evidence not in the records. . . . However, several jurisdictions influenced by the teaching of highly regarded legal commentators have recognized an exception to this rule and have permitted medical witnesses to express opinion testimony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession. . . .

As Professor Wigmore explains, "where the information is that of an attending nurse or physician having personal observations and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this." 3 Wigmore, Evidence §688(4) (Chadbourn Revision).

It appears to us that the foregoing limited exception is wise and salutary, hence we adopt it as the law in Pennsylvania. (Citations omitted.)

*Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698-99 (1971). Here, Dr. Gray testified that both auditory and opthomological conditions must be taken into account in deciding whether brain surgery is required. As these reports are the type a neurosurgeon would routinely encounter in his practice, Dr. Gray's testimony was properly permitted.

Defendant next complains that the issue of plaintiff's loss of future earning capacity based on the testimony of plaintiff's parents and twin brother was improperly submitted to the jury. According to the defendant, the jury was forced to speculate on which portion of plaintiff's future earning capacity was attributable to defendant's conduct and plaintiff's pre-existing physical condition. We disagree.

The testimony in question established that plaintiff had indeed suffered numerous problems following the removal of the malignant brain tumor in 1970. All of the witnesses, including plaintiff, testified that by 1975, immediately prior to the incident in question, plaintiff had experienced almost a full recovery, allowing him to lead a normal life. Since the incident, plaintiff has had problems with short-term memory loss. Further, the double vision occasioned by the trauma to the head has made it impossible for plaintiff to read computer screens, thereby forcing plaintiff to abandon his major in Business Administration at Penn State. Plaintiff's loss of balance would also have an effect on future earning capacity. Finally, both plaintiff and his father testified that since the incident, plaintiff has been able to secure only temporary work. In *Gary v. Mankamyer*, 485 Pa. 525, 403 A.2d 87 (1979), the court held that the fact and extent of impairment of future earning capacity are factual questions which do not require expert testimony. Allowing the jury to consider this question in the instant case was therefore not error.

Defendant alleges that the trial court made numerous errors in its instructions to the jury, thus requiring the grant of a new trial. In most instances, defendant is complaining because the trial court did not charge the jury in the exact language offered by defendant's requested points for charge. We have reviewed the charge in its entirety and can find no error requiring the grant of a new trial. *Smith v. Chardack*, 291 Pa. Superior Ct. 173, 435 A.2d 624 (1981).

Finally, defendant complains that the trial court erroneously admitted into evidence medical bills which had no relationship to the incident in question. Among the bills admitted were those for the treatment plaintiff received while at Mercy Hospital, some of which was necessary because of the malfunctioning

shunt. We must again note that Dr. Gray was unable to state with a reasonable degree of medical certainty that the trauma sustained in the incident caused the shunt to malfunction. Furthermore, Dr. Gray testified that a good deal of his responsibility in treating plaintiff was to make certain the shunt was again operating in a proper manner. It is, therefore, clear that the jury should have been instructed to determine what portion of the bills was for treatment necessitated by the incident and could, therefore, be considered in assessing damages, and what portion was unrelated to the incident.

Plaintiff argues that a new trial on the issue of damages is not necessary because in *Kravinsky* the Superior Court simply directed that improperly admitted bills be deducted from the verdict. There, however, the amount of the improperly admitted bills was a sum certain, while in the instant case no allocation has been made so that any reduction which we would order would be mere speculation. We, therefore, believe the case must be remanded for a new trial on the issue of damages only.

On plaintiff's cross appeal, he claims that the trial court erred in refusing to assess delay damages as called for in Pa. R.C.P. No. 238, which provides:

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court . . . shall

(1) add to the amount of compensatory damages in the . . . verdict of a jury . . . damages for delay at ten (10) percent per annum, not compounded, which shall become part of the . . . verdict. . . .

. . . .

(e) If a defendant at any time prior to trial makes a written offer of settlement in a speci-

fied sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by ... verdict ..., exclusive of damages for delay, more than 125 percent of the offer, the court ... shall not award damages for delay for the period after the date the offer was made.

(f) If an action is pending on the effective date of this rule [April 15, 1979], ... damages for delay shall be computed from the date the plaintiff files the initial complaint or from a date one year after the accrual of the cause of action, or from a date six (6) months after the effective date of this rule, whichever date is later.

(g) This rule shall not apply to (1) eminent domain proceedings: (2) pending actions in which damages for delay are allowable in the absence of this rule.

The trial court refused to apply Rule 238, citing the following legislative proviso.

Damages shall be recoverable [against Commonwealth parties] only for:

(1) Past and future loss of earnings and earning capacity.

(2) Pain and suffering.

(3) Medical and dental expenses. ...

(4) Loss of consortium.

(5) Property losses. ...

Section 8528 of the Judicial Code, 42 Pa. C. S. §8528. The trial court held that since delay damages were not contained in what the Legislature intended to be an all-inclusive list, delay damages were not recoverable against the Commonwealth.

While recognizing that the dichotomy between substantive law and procedural rules is not always easy

to discern, *See Hanna v. Plumer,* 380 U.S. 460 (1965) and *Commonwealth v. Wharton,* 495 Pa. 581, 435 A.2d 158 (1981), the Supreme Court has held that Rule 238 is a procedural rule and, therefore, constitutional as a valid exercise of that court's procedural rule making power. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981). As the court stated, "although the award for delay of time may be 'in the nature of interest', in reality, *it is merely an extension of the compensatory damages* necessary to make a plaintiff whole." *Id.* at 65, 436 A.2d at 154 (emphasis added).

The Legislature has decided that only five general classes of compensatory damages may be recovered against Commonwealth parties. This pronouncement of substantive law is clearly a legitimate exercise of the Legislature's power. It is equally clear that Rule 238, a legitimate exercise of the Supreme Court's power and applicable to all litigants availing themselves of the judicial process, involves a procedural matter, entirely within the province of the Court.

In a letter to former Governor Shapp, the Supreme Court stated, " 'The Pennsylvania Constitution gives the state's Supreme Court exclusive power to establish rules of procedure for state courts' and that the legislature is *without power* to control procedure.' " *In Re 42 Pa. C. S. §1703,* 482 Pa. 522, 529, 394 A.2d 444, 448 (1978) (emphasis in original), quoting *Garret v. Bamford,* 582 F.2d 810, 814 (3rd Cir. 1978). Once it has been determined that Rule 238 is procedural and therefore constitutional, the Legislature would lack the power to forbid the award of delay damages against Commonwealth parties.

In summation, the defendant has shown no error below which would require a retrial on the question of liability. As previously mentioned, a retrial on the question of damages is necessary. Following that re-

trial, delay damages must be awarded in accordance with Pa. R.C.P. No. 238. *Accord Commonwealth v. Twentier,* 76 Pa. Commonwealth Ct. 537,   A.2d (1983).

Reversed and remanded.

ORDER

AND Now, November 16, 1983, the July 16, 1982, order of the Court of Common Pleas of Butler County at No. A.D. 77-224, Book 109, page 306 is reversed and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.