677 A.2d 1235

**Raymond GRAVLIN, Appellant,**

v.

**FREDAVID BUILDERS AND DEVELOPERS, Appellee.**

Superior Court of Pennsylvania.

Argued April 25, 1996.

Filed June 7, 1996.

658

Kenneth M. Rodgers, Philadelphia, for appellant.

Larry L. Turner, Philadelphia, for appellee.

Before McEWEN, President Judge, and SAYLOR and MONTEMURO *, JJ.

MONTEMURO, Judge.

This is an appeal from a judgment entered in favor of appellant for $186,361 in a personal injury case. Appellant, a surveyor, injured his shoulder when he stepped backward and fell onto a pile of stones used to anchor a cover for a storm

* Retired Justice assigned to Superior Court.

sewer inlet adjacent to the construction site where he was working. Use of a cover, known as a silt saver, was mandated by the Department of Environmental Resources to filter mud and rocks washed from the construction site and prevent this material from entering the sewer system.

Appellant underwent two surgical procedures on his shoulder. Then, claiming total disability from his injury, described as stretch damage to the brachial plexus nerve sheath,[1] appellant brought suit against the general contractor on grounds of negligence for placing the stones around the drain. The jury found the contractor liable and awarded appellant $287,000, but at the same time found him 50% liable for his injury under comparative negligence principles. The award was molded accordingly and delay damages assessed, reaching the final figure of $186,361. Both parties' post trial motions were denied, and appellant now brings this appeal, raising six issues.

■ Appellant's first two claims are closely interrelated. He argues initially that he is entitled to a new trial because the trial court refused a proposed charge to the jury and denied admission of certain evidence concerning appellee's failure to obtain a city permit for the sewer cover device over which appellant fell. Appellant contends that the situation here requires application of Comment d to Section 350 [2] of the Restatement of Torts Second, which states that

A possessor of land abutting upon the highway who makes an excavation in it without the consent of the municipality or who places material upon it or who obstructs the highway otherwise and in the exercise of his privilege as a possessor

1. The brachial plexus nerve group is made up of those nerves which radiate to the shoulder and arm, originating in the last four cervical and first thoracic ventral roots emerging from the spine.

2. Restatement of Torts, Second, § 350

A possessor of land over which there is a public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition any structure or other artificial condition created or maintained in the highway by him or for his benefit subsequent to its dedication.

is, like any other person who does so, subject to liability for physical harm caused thereby to travelers upon the highway.

■ As the trial court noted, this section was never meant to apply to circumstances such as the one here, and, moreover, any intrusion onto the highway created by the filter and the stones used to anchor it was at best de minimis. Liability pursuant to use of an unauthorized filter would have to be based on a connection between the violation and the injury. Further, neither of the cases cited by appellant in support of the application of Section 350 is apposite. *Kopka v. Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 91 A.2d 232 (1952) concerns "the question of the right of the possessor of land to recover damages for personal injuries sustained by him in consequence of a trespasser's invasion of his property." *Id.* at 446, 91 A.2d at 233. The facts here bear no relation to those in *Kopka*, as appellant is not the possessor of the property, and appellee is not a trespasser. The other case on which appellant relies, *Commonwealth of Pennsylvania Department of Transportation v. Phillips*, 87 Pa.Cmwlth. 504, 488 A.2d 77 (1985), is similarly inapt. It involves a wrongful death and survival action brought by the family of a man killed when his car skidded on a patch of ice caused by overflow from a drainage ditch. Although, as appellant points out, the Commonwealth Court quotes Section 350 in a footnote, the footnote merely states that the appellant in *Phillips*, the Department of Transportation, cites this section in support of its argument, which was, like appellant's herein, unsuccessful. The trial court did not err in refusing the charge on Section 350, nor in refusing to grant appellant a new trial on that basis.

■ Appellant's second issue advances the theory that the jury should have been instructed on negligence per se because of appellee's violations of the Clean Streams Act, 35 P.S. § 691.1 *et seq.*, and certain City of Philadelphia ordinances in using the wrong silt strainer cover for the sewer inlet. He claims that once having found negligence per se, the jury is foreclosed from considering comparative negligence. Hence,

the lack of an instruction on negligence per se mandates a new trial.

Negligence per se has been defined as conduct that may be treated as negligence without further argument or proof as to the particular surrounding circumstances. *Centolanza v. Lehigh Valley Dairies*, 430 Pa.Super. 463, 477, 635 A.2d 143, 149 (1993) *aff'd* 540 Pa. 398, 658 A.2d 336 (1995). However,

> Violation of a statute, although negligence per se, does not constitute a ground for imposing liability unless it can be shown to be substantial factor in causing the injury. Whether a party's conduct has been a substantial factor in causing injury to another is ordinarily a question of fact for the jury, and may be removed from the jury's consideration only where it is so clear that reasonable minds cannot differ on the issue.

*Vernon v. Stash*, 367 Pa.Super. 36, 46, 532 A.2d 441, 446 (1987) (citations omitted).

Further, it is well settled that there must be a direct connection between the harm meant to be prevented by the statute, and the injury complained of. *See Ennis v. Atkin*, 354 Pa. 165, 47 A.2d 217 (1946).[3] Even assuming that the ordinances and statute referred to were directed toward preventing the harm appellant suffered, and they are concerned with environmental degradation not personal injury, there is nothing, even about a finding of negligence per se, which removes the comparative negligence issue from the jury's consideration.

The Comparative Negligence Statute, 42 Pa.C.S.A. § 7102 reads in pertinent part as follows:

> (a) **General Rule.**—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the

---

**3.** *Jinks v. Currie*, 324 Pa. 532, 188 A. 356 (1936), notes that violation of a municipal ordinance is not negligence per se, but is evidence of negligence.

plaintiff ... where such negligence was not greater than the causal negligence of the defendant ... against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

Just as the connection must be made between appellee's conduct and any ensuing injury, appellant's conduct too must be scrutinized. Consideration of appellant's own responsibility for the accident would not have been removed by the finding of liability per se on appellee's part.

This case is, as the trial court observes, a slip and fall, posing the question of whether appellee breached a duty of care owed to appellant. The jury found that it had done so. Nevertheless, appellant's first two issues are aimed at designating a source for the assignment of liability. However, because appellee was found by the jury to be negligent, appellant's claims resolve themselves into complaints that he should not have been found partially responsible for his injury, and/or that the award was not large enough. There is thus no necessity or utility in pursuing the liability argument, since the fact of liability having been resolved in appellant's favor renders moot any discussion of blame.

■ Appellant's third issue concerns whether the trial court erred in refusing to instruct the jury on disfigurement as a element of damages where he sustained a four inch scar on his shoulder. Appellant claims, following the Subcommittee Note to 6.01H of the Pennsylvania Suggested Standard Civil Jury Instructions, that because the scar was observable to others when he took his shirt off, his request for the instruction should have been honored.

As appellee points out, it is not clear that the jury could in fact see the scar even when appellant had removed his shirt. This court has held in *Fish v. Gosnell,* 316 Pa.Super. 565, 463 A.2d 1042 (1983), that "Conscious suffering from physical injuries, as well as 'anxiety and embarrassment' from disfigurement or limitations on activities, are all component parts of a damages claim for pain and suffering." *Id.* at 582, 463 A.2d

at 1051. However, to the extent that appellant advances the scar as a discrete result of his injury separate and apart from other forms of damages, he has failed to produce evidence, or even make a claim, of separate and distinct damages attributable to the scar. On this basis the trial court was justified in denying the request for an instruction specific to the scar.

■ Appellant's next issue is whether the trial court erred in allowing certain testimony from appellee's expert concerning a supplemental report. Appellant argues that in permitting the testimony, the trial court allowed the expert to change his theory of causation. It is claimed that the initial report from this expert, a neurosurgeon, attributed appellant's symptoms, pain and immobility in his arm, to two unsuccessful surgical procedures following the fall. If true, this attribution would still have placed the full liability for appellant's injuries on appellee. Appellant then insists that the second, supplemental report, altered its theory of causation to the injuries appellant received in an automobile accident while visiting in Florida after the fall on appellee's construction site.

A review of the two reports submitted by Dr. Lin, the neurosurgeon, reveals the following:

In the first report, submitted 11.9.94, Dr. Lin states

[I]t is my professional opinion based on reasonable medical certainty that Mr. Gravlin did not and could not have suffered any Brachial Plexus injury. *There is nothing in the history or physical findings that would suggest that the brachial plexus was injured either directly from the fall in(sic) Oct. 10, 1989 or indirectly, from the two surgical procedures.*

Report of 11.9.94 at 2 (emphasis added).

At the time this report was prepared, Dr. Lin was unaware of the Florida automobile accident, which had occurred on 4.19.90. He had been told, however, of treatment received by appellant in Florida.

The Supplemental Report, submitted 5.30.95 notes that although appellant's fall had occurred in October of 1989, there had been no complaint of neuritic pain until 7.30.90, two

months after the auto accident[4]; the brachial plexus injury was diagnosed by electrophysiological studies performed on 9.29.90, after the automobile accident, and the physician performing the studies was also unaware of the vehicular accident for which appellant had undergone extensive therapeutic protocols aimed at alleviating severe cervical and lumbar sprain. Dr. Lin's second report concluded, as the previous one had done, that any abnormality of the brachial plexus could not have come from appellant's fall, but was attributable to the cervical injury sustained in the automobile accident. Thus the two reports introduced no new theory of causation; the trial court reasonably regarded the second report as supplementary to the first, properly admitted it, and properly allowed Dr. Lin to testify concerning its contents.

■■■ Appellant next contends that the trial court erred in allowing him to be examined by appellee's expert after the start of trial when the administrative judge had already refused appellee permission for the examination.

The pretrial management of the instant case was assigned to Philadelphia's Day Backward Program, a system designed to eliminate the court's large backlog of cases by establishing deadlines for certain pretrial proceedings. The trial court found that appellant had produced the report of his psychiatrist, Dr. Kool, on the eve of (the original) trial date more than two months after the date set by the administrative judge of the Day Backward program for close of discovery. Upon receipt of the report, appellee properly petitioned the administrative judge for extraordinary relief in the form of another examination of appellant. However, the request was denied, apparently because the discovery cutoff date had already passed. At the beginning of trial, appellee renewed the motion for appellant to submit to a psychiatric examination. Because the report from appellant's expert had been supplied so late, the trial court permitted an examination of appellant by appellee's psychiatrist during the evening hours after trial

4. The report noted that at the time of the accident, appellant's shoulder was still in an immobilizer from his second surgery.

had begun. Both counsel were to be present, and the examination was to last no longer than 90 minutes.

 Appellant now claims that the report by appellee's psychiatrist should never have been ordered, that once ordered it should have been produced in time for his own psychiatrist, Dr. Kool, to comment upon, and once the psychiatrist was on the stand, there should have been no limitations placed on his cross-examination.

 While it is true that ordinarily a judge should not, in the same case, overrule another judge of coordinate jurisdiction, *Okkerse v. Howe*, 521 Pa. 509, 556 A.2d 827 (1989), "this rule is not a matter of jurisdiction per se; rather it is a rule of sound jurisprudence based on the policy of fostering finality of pretrial applications so that judicial economy and efficiency can be maintained." *Id.* at 517, 556 A.2d at 831. Departure from the rule is however, permissible under exceptional circumstances: where there has been an intervening change in the controlling law, a substantial change in the facts or evidence underlying the dispute, or where the previous holding was clearly erroneous and would create a manifest injustice if followed. *Commonwealth v. Starr*, 541 Pa. 564, 575–76, 664 A.2d 1326, 1332 (1995). We find that given Dr. Kool's unequivocal statement of permanent psychiatric disability [5] and resultant unemployability, the evidence, which had not hitherto contained such an allegation, had substantially changed, and any further denial of appellee's motion to have appellant examined by its own psychiatrist would have created a manifest injustice.

We would also note that despite appellant's claim of prejudice resulting from appellee's failure to produce the report in time for Dr. Kool to comment upon, appellant made no attempt to introduce rebuttal testimony after appellee's expert had given evidence.

With regard to the limitations placed on appellant's cross examination of appellee's expert, the proposed interrogation

5. Appellant is described as suffering from chronic dysthymia with a guarded prognosis.

concerned a document which was not in evidence, and whose author was never called to the witness stand. The trial court considered the report as hearsay, and properly restricted the questions posed regarding it.

Appellant's final issue assigns error to the court's refusal of the jury's request to review during its deliberations the economic loss calculations prepared by appellant's expert. Appellant has not, however, directed us to the portion of the record which contains this exchange between the jury and the court, and appellee asserts that no such request was recorded. Appellant has also failed to supply us with any authority which suggests that the denial of such a request is not within the trial court's discretion, and the trial court itself does not address the matter in its opinion. Under these circumstances, we find no error in the trial court's decision.

Judgment affirmed.