**Santiago v. Bishop**

*Jaffa F. Stein* and *Bonnie R. Love,* for plaintiff.
*Kenneth A. Goodman,* for defendant.

SCHMEHL, J.L., *J.,* May 16, 2003— This is a negligence action for damages arising out of a collision in-

volving a pedestrian and an automobile at the intersection of 5th Street and Walnut Street in the City of Reading. Fifth Street runs north and south and there is a traffic light at the intersection. Sometime between 9:30 p.m. and 10 p.m. on December 24, 1994, the plaintiff, Angel Santiago, began walking westbound across the south side of 5th Street in the crosswalk. David Bishop was traveling in an automobile northbound on 5th Street when he struck the plaintiff on the front driver side of his vehicle. As a result of this collision, the plaintiff suffered severe injuries.

On December 18, 2002, following a trial, the jury returned a verdict against Angel Santiago and in favor of David Bishop. Specifically, the jury apportioned the negligence between the parties as follows:

"David Wayne Bishop—47 percent negligent

"Angel M. Santiago—53 percent negligent."

On December 27, 2002, the plaintiff filed post-trial motions. On February 14, 2003, this court heard argument on plaintiff's post-trial motions. On March 11, 2003, this court issued an order, denying plaintiff's motions for post-trial relief. This appeal followed.

Pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure and an order of this court, the plaintiff filed a concise statement of matters complained of on appeal, asserting the following claims:

"(1) The trial court incorrectly charged the jury on assumption of the risk in a motor vehicle negligence case which doctrine [misled] and confused the jury. Once given, over plaintiff counsel's objection, there was no curative instruction given as requested.

"(2) The trial court's charge granting a directed verdict to defendant limited to speeding only was a misstatement of the law, confusing and erroneous, leading the jury to conclude that defendant had not breached other duties contrary to the evidence and law.

"(3) The trial court failed to instruct the jury as to defendant's duty of care applicable to a motor vehicle operator facing a red, green or yellow light. In this case there was no credible evidence upon which this jury could conclude that defendant had a green light at the time of impact and the jury should have been charged accordingly.

"(4) The court erred in charging comparative negligence because defendant failed to meet its burden of proof on that issue.

"(5) The trial court's charge on comparative negligence was a misstatement of law, misleading, confusing and erroneous. The charge as given was piecemeal and confusing. The trial court provided no factual context or criteria for an application of the charge to the facts of the case. The trial court failed to give plaintiff's requested charge.

"(6) The [trial court's] charge on substantial factor was flawed and erroneous because the charge failed to include the fact that there can be more than one substantial factor.

"(7) The trial court erroneously allowed counsel for defendant to cross-examine plaintiff's expert with sections of the Pennsylvania Motor Vehicle Code which impose[s] a duty of care on a pedestrian not crossing within a crosswalk, which does not apply to the facts in

this case. Under this section improperly referenced the pedestrian has a duty to yield to a motor vehicle operator. It was error for the trial court to allow a section of the Pennsylvania Motor Vehicle Code, which had no application to the facts in this case to the referenced, because the jury would naturally conclude that plaintiff had a duty to yield to defendant when he did not. Moreover, the court denied plaintiff's request for a curative instruction which further unduly prejudiced the plaintiff.

"(8) In light of uncontroverted evidence produced at trial that defendant David Wayne Bishop, was negligent as a matter of law, [t]he jury's verdict that plaintiff's percentage of causal negligence was greater than defendant is contrary to the weight of the evidence and law."

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure and for the following reasons this court asks that the instant appeal be denied.

## THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE

The standard of review for a claim that the verdict is against the weight of the evidence is as follows:

"Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is

conflicting and the finder of fact could have decided either way." *Ty-Button Tie Inc. v. Kincel and Co. Ltd.,* 814 A.2d 685, 692 (Pa. Super. 2002).

In reviewing such a claim, the evidence must be viewed in the light most favorable to the verdict winner. *Bey v. Sacks,* 789 A.2d 232 (Pa. Super. 2001).

The relevant facts of this case are as follows: Sometime between 9:30 p.m. and 10 p.m. on December 24, 1994, the plaintiff, Angel Santiago, was walking west on the sidewalk of Walnut Street in the City of Reading. His girlfriend, Vanessa Rodriguez was walking two to three feet behind him. After the two approached the intersection of 5th Street and Walnut Street, Angel Santiago began walking across the southeast side of 5th Street in the crosswalk. David Bishop was traveling in a 1988 Hyundai Excel northbound on 5th Street when he struck the plaintiff on the front driver side of his vehicle. The windshield of the defendant's car impacted the plaintiff's head with such force that the windshield shattered, leaving a head-sized hole on the driver side of the glass. (See plaintiff's exhibit 20.)

The plaintiff introduced eyewitness testimony from Charles Hewins, another pedestrian in the vicinity of the accident. He testified that he was walking in the same direction of the plaintiff, except on the opposite side of the street. He stepped one foot off the curb in an effort to cross 5th Street when he witnessed the defendant's vehicle strike the plaintiff. He also said that the defendant's car struck the plaintiff with such force that the plaintiff literally flew up in the air and landed several feet from the point of impact. According to Charles Hewins, the

traffic light for traffic traveling on Walnut Street was green. (N.T. 12/9/2002 pp. 146-50.)

The plaintiff's engineering expert, George P. Widas, opined that the defendant caused the accident because there was "more than enough time from when Mr. Santiago stepped off of the curb and reached the point of impact for Driver Bishop to perceive, react and brake to a stop, as well as more than enough time to do other things such [as] just slow down and let Mr. Santiago clear his path of travel." (N.T. 12/11/2002 p. 373.)

Although the defendant admitted to traveling 30 to 35 miles per hour, in excess of the 25 miles per hour speed limit, he did not admit that he ran the intersection's red light. In fact, he testified that the last time he looked up at the traffic light, before crossing the intersection, the light was green. (N.T. 12/12/2002 pp. 323, 326.) In support of this claim, an independent eyewitness, taxi driver Michael Zocco, testified that he was stopped in his cab at a red traffic light on the west side of Walnut Street, facing east, at the time of the accident. He saw the defendant's car approach the intersection, and he saw the plaintiff and his girlfriend walking toward the intersection. He then heard a loud thud and saw the plaintiff hurling through the intersection and landing on the southbound side of Fifth Street. During this entire time, according to Michael Zocco, the traffic light for traffic traveling on Walnut Street was red. (N.T. 12/13/2002 pp. 482-90.)

Moreover, the defendant introduced expert testimony from engineer James C. Druecker. He opined that the plaintiff should have been able to see the defendant's vehicle as it was approaching northbound on 5th Street.

He also testified that he believed that the plaintiff had more time to perceive, view, and react to the defendant's vehicle than the defendant had with respect to the plaintiff. (N.T. 12/17/2002 pp. 267-69.) He also found significant that the plaintiff's girlfriend, who was walking with the plaintiff, was able to avoid the accident, while the plaintiff was not. *Id.* at 256. Finally, he opined that no driver should "expect a pedestrian to be crossing against a red light in darkness at 9:30 at night on Christmas Eve." *Id.* at 270.

"It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence." *Gunn v. Grossman,* 748 A.2d 1235, 1240 (Pa. Super. 2000), *appeal denied,* 564 Pa. 700, 764 A.2d 1070 (2000). The jury has the power to resolve conflicting testimony and determine which of the conflicting testimony, if any, it will accept. *Goldmas v. Acme Markets Inc.,* 393 Pa. Super. 245, 574 A.2d 100 (1990). Conversely, a trial court lacks the authority to disregard the jury's credibility determinations and substitute its own simply because the trial court would have reached a different conclusion. *Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764 (2001).

In the instant case, there was conflicting testimony concerning two issues of the plaintiff's case: (1) whether the defendant's traffic signal was green, yellow, or red? and (2) assuming the defendant's light was green, which party had the better opportunity to avoid the accident? In accordance with the standard set forth in *Ty-Button Tie Inc. v. Kincel and Co. Ltd., supra,* the plaintiff is not entitled to a new trial because the jury could have decided this case in either party's favor. Obviously, the jury

accepted the testimony of Michael Zocco, engineer James C. Druecker, and the defendant, over the testimony of the plaintiff and his witnesses. Accordingly, the jury was within its rights to resolve both of these questions in the defendant's favor and conclude that the plaintiff was more negligent than the defendant in causing this accident.

Nevertheless, the plaintiff argues that because the defendant was negligent as a matter of law (*i.e.,* the fact that he was speeding) the jury could not have found that plaintiff's percentage of causal negligence was greater than defendant's. This court disagrees.

Negligence as a matter of law often called "negligence per se" is conduct that may be treated as negligence without further argument or proof as to the particular surrounding circumstances. *Gravlin v. Fredavid Builders and Developers,* 450 Pa. Super 655, 677 A.2d 1235 (1996). Violation of a statute constitutes negligence per se. *Id.* at 661, 677 A.2d at 1238. Speeding is a violation of the Vehicle Code, 75 Pa.C.S. §3362, and therefore constitutes negligence per se. However, a violation of a statute, although negligence per se, does not constitute grounds for imposing liability unless it can be shown to be a substantial factor in causing the injury and no other negligence also a substantial factor was found by the finder of fact to be greater. *Id.* Moreover, the determination that a party has been negligent per se does not foreclose the jury from considering the comparative negligence of both parties.

The evidence from engineer James C. Druecker was that the plaintiff, notwithstanding the defendant's speeding, had the better opportunity to perceive, view, and react to the defendant's vehicle. Assuming that the defendant

traversed the intersection with a green light and the plaintiff did not, reasonable minds could differ as to whether or not the speed at which the defendant drove outweighed any and all other negligence. Consequently, the jury may and did reasonably conclude that plaintiff's percentage of causal negligence was greater than that of the defendant.

## THE COURT DID NOT ERR IN ALLOWING THE DEFENDANT TO CROSS-EXAMINE THE PLAINTIFF'S EXPERT ON THE VEHICLE CODE

The Superior Court has held that "[t]he scope of cross-examination is within the sound discretion of the trial court, and we will not reverse the trial court's exercise of discretion in absence of an abuse of that discretion." *Yacoub v. Lehigh Valley Medical Associates P.C.,* 805 A.2d 579, 592 (Pa. Super. 2002). "[I]n setting limits on cross-examination, the trial court may consider whether the cross-examination would be likely to confuse or mislead the jury." *Id.* (quoting *General Equipment Manufacturers v. Westfield Insurance Co.,* 430 Pa. Super. 526, 635 A.2d 173 (1993)). As with any other type of evidence, to be admissible it must be relevant and also not unfairly prejudicial. See Pa.R.E. 403.

In the instant case, during direct examination, plaintiff's counsel posed questions to their expert engineer concerning the Pennsylvania Driver's Manual:

"Ms. Stein: How did you use the Pennsylvania Driver's Manual, what portion of it?

"The witness: It describes driver performance and responsibilities.

"Q: What portions of that did you rely upon in this case?

"A: There is a right-of-way section in the driver manual that explains drivers' and pedestrians' rights of way.

"Q: What does the Pennsylvania Driver's Manual tell us?

"A: *It says that the law does not give anyone the right-of-way.* It only tells who must yield the right-of-way. It goes on to say drivers must yield to pedestrians in crosswalks.

"Q: There's no qualification to that?

"A: Correct." (N.T. 12/13/2002 pp. 374-75.) (emphasis added)

Therefore, the plaintiff's expert witness improperly characterized portions of the driver's manual as "the law." Moreover, the expert's report stated that the law does not give anyone the right of way; it only says who must yield. When the defendant's counsel attempted to clear this up during cross-examination, the plaintiff objected. (N.T. 12/13/2002 p. 421.) During a lengthy in-chambers discussion, the court ultimately ruled that the defendant could cross-examine the expert on whether he reviewed the Pennsylvania statutes and whether he was aware that there is a statute giving rights to both parties. However, the court specifically ruled that defense counsel was prohibited from going into detail with the statute. *Id.* at 426.

In view of the fact that the plaintiff purposely elicited legal opinions from the expert, this court believes the ruling was fair to both sides. Moreover, the impact that this ruling had on the outcome of the trial was minimal

since the court, not the parties, ultimately instructed the jury on the law.

## THE COURT DID NOT ERR IN CHARGING THE JURY ON COMPARATIVE NEGLIGENCE

The standard of review for determining whether a trial court erred by giving a jury instruction on comparative negligence is as follows:

"The standard for determining whether a jury instruction on comparative negligence is warranted under Pennsylvania law is well settled. The burden of establishing comparative negligence rests on the defendant. *Pascal v. Carter,* 436 Pa. Super. 40, 647 A.2d 231, 233 (1994) (citing *McCullough v. Monroeville Home Association, Post 820 Inc.,* 270 Pa. Super. 428, 411 A.2d 794, 795 (1979)). "[I]f there is some evidence of [comparative] negligence produced in *any* of the evidence, it is reversible error not to charge the jury on the issue, when requested to do so by the defendant." *Id.* (citing *Matteo v. Sharon Hill Lanes Inc.,* 216 Pa. Super. 188, 263 A.2d 910 (1970)). See *e.g., Rizzo v. Michener,* 401 Pa. Super. 47, 584 A.2d 973 (1990), *appeal denied,* 528 Pa. 613, 596 A.2d 159 (1991) (citing *Levine v. Rosen,* 394 Pa. Super. 178, 575 A.2d 579 (1990), *affirmed,* 532 Pa. 512, 616 A.2d 623 (1992)); *Binder v. Jones & Laughlin Steel Corp.,* 360 Pa. Super. 390, 520 A.2d 863 (1987), *appeal denied,* 516 Pa. 631, 533 A.2d 90 (1987); *Speer v. Barry,* 349 Pa. Super. 365, 503 A.2d 409, 412 (1985), *appeal denied,* 514 Pa. 623, 522 A.2d 49 (1987). In addition, a plaintiff's negligent conduct must be a proximate cause of his injury if his conduct is to affect his recovery. *Pascal, supra* (citing *Koelle v. Philadelphia Electric Co,* 443

Pa. 35, 277 A.2d 350 (1971)). For negligent conduct to be a proximate cause of an injury, it must be a substantial factual cause of the injury for which damages are sought (citing *Dornon v. Johnston,* 421 Pa. 58, 60, 218 A.2d 808, 809 (1966))." *Zieber v. Bogert,* 747 A.2d 905, 908 (Pa. Super. 2000).

In the instant case, the defendant produced evidence that the plaintiff was walking against a red light at 9:30 p.m. and stepped out in front of a moving vehicle. Clearly, the jury could have concluded that this was negligent behavior on the part of the plaintiff which was a proximate cause of the accident. Accordingly, it would have been reversible error had this court not given an instruction to the jury on comparative negligence.

## THE PLAINTIFF WAIVED ANY CHALLENGE TO THE COURT'S JURY INSTRUCTION ON COMPARATIVE NEGLIGENCE

Although the plaintiff argues that the comparative negligence charge should never have been given, the plaintiff alternatively argues that the substance of the jury instruction on comparative negligence was a "misstatement of law, misleading, confusing and erroneous. The charge as given was piecemeal and confusing. The trial court provided no factual context or criteria for an application of the charge to the facts of the case. The trial court failed to give plaintiff's requested charge."

"There can be no doubt that [pursuant to the provisions of Rule 302] issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Truesdale by Truesdale v. Albert Einstein Medi-*

*cal Center,* 767 A.2d 1060, 1063 (Pa. Super. 2001) (quoting *Commonwealth Liquor Control Board v. Willow Grove Veterans Home Association Inc.,* 97 Pa. Commw. 391, 509 A.2d 958, 961 (1986)). A litigant's failure to object to jury instructions at the time they are given constitutes a waiver of that issue on appeal. See *Reardon v. Meehan,* 424 Pa. 460, 468, 227 A.2d 667, 672 (1967) (holding that "[C]ounsel shall not sit idly by, tak[ing] his [or her] chances with instructions given at trial, and then, having lost the case, seek a new trial and second opportunity, on the ground that the charge was prejudicial to his client").

In the instant case, after the court gave the substance of its closing instructions to the jury and the jury was sent into the deliberation room, counsel for the plaintiff objected, as follows:

"Ms. Stein: And it's in the comparative negligence statute, and I didn't hear that language, judge.

"The Court: All right. Hold that. Let's bring the jury—tell them they've got to come back in the courtroom.

"Ms. Love: Before you get there, judge, why don't we get it out."

(Whereupon, the jury returned to the courtroom at 1:50 p.m.)

"Ms. Stein: I can give you the statute, judge.

"The Court: All right, ladies and gentlemen. Sorry to interrupt your lunch. But before you begin your deliberations, as counsel and I were discussing the exhibits, there was one more point brought up that you must be instructed on. I'm in the process of getting that. Is it in the book? Is it in the book you have?

"Ms. Stein: Yes, judge, but you have to kind of—

"The Court: Just bring it here and I'll start. All right.

"This last part deals with the apportionment which would be question three on the verdict slip. If you would find that the plaintiff was contributorily negligent and that such contributory negligence was a substantial factor in bringing about his harm, then you must apply the Comparative Negligence Act which provides as follows: The fact that a plaintiff must have been guilty of negligence shall not bar a recovery by the plaintiff where such negligence was not greater than that causal negligence of the defendant. But any damages sustained by the plaintiff shall be diminish[ed] in proportion to the amount of negligence attributed to the plaintiff. All right. Is there any other part of that that you request read?

"Ms. Stein: Yes

"The Court: All right. All right. Let me see counsel at side-bar."

(Whereupon, discussion was held off the record at sidebar.)

"The Court: I'll read this again so I can read the whole thing in context for you, ladies and gentlemen. The fact that a plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff where such negligence was not greater than the causal negligence of the defendant, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributable to him. If you have found the plaintiff's causal negligence to be greater than 50 percent, then the plaintiff cannot recover in this case, and you should not go on to the question about dam-

ages; and then you should return to the courtroom. That would be if you find the plaintiff's causal negligence to be greater than 50 percent, then don't go on to the final question, just return to the courtroom.

"After you return your answers to these questions on the verdict form signed by the foreperson, the court will then determine the amount to be awarded to the plaintiff, if any, by reducing the amount of damages found by you in proportion to the percentage of the plaintiff's causal negligence, if any.

"I again caution you that you are not to make this reduction yourselves in reaching the amount of the plaintiff's damages, period.

"All right. Any counsel want to see me?

"Ms. Stein: No. Thank you, judge.

"Mr. Goodman: No. Thank you very much, your honor.

"The Court: All right. Everybody is now happy. You may now resume your deliberations." (N.T. 12/ 13/ 2002 pp. 76-79.)

Therefore, not only did the court read twice the language from the comparative negligence statute, as requested by the plaintiff's counsel, the court also gave the plaintiff ample opportunity to object or request changes after the court's jury instructions were completed. When asked by the court whether either party wanted to see the court again at side-bar, Ms. Stein stated, "No. Thank you, judge." *Id.* Any objections could have been dealt with at that time and corrected before the jury resumed their deliberations. Counsels' failure to do so constituted a waiver of a challenge to that jury instruction.

Assuming arguendo, that the plaintiff did not waive this issue, then the standard of review for a challenge to jury instructions is "to determine if the trial court abused its discretion or committed an error of law. We will not grant a new trial because of an erroneous jury instruction unless the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Hall v. Jackson,* 788 A.2d 390, 399 (Pa. Super. 2001) (quoting *Fragale v. Brigham,* 741 A.2d 788, 790 (Pa. Super. 1999). Further, "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Id.*

The court has reviewed the transcript with respect to its instructions to the jury on comparative negligence. This court found this charge to be a correct statement of Pennsylvania law and fair to both the plaintiff and the defendant. Accordingly, this post-trial claim is without merit.

## THE COURT DID NOT ERR IN ITS INSTRUCTIONS TO THE JURY ON THE DEFENDANT'S DUTY OF CARE

Next, the plaintiff argues that the court's instruction to the jury on the defendant's duty of care was inadequate because, "there was no credible evidence upon which this jury could conclude that defendant had a green light at the time of impact and the jury should have been charged accordingly."

This is simply a restatement of the plaintiff's argument that the verdict was against the weight of the evidence. We have already addressed this argument above.

## THE COURT ISSUED A SUFFICIENT CURATIVE INSTRUCTION

The defendant requested that the court give an instruction to the jury on assumption of the risk. The court held an in-chambers charging conference prior to closing arguments. At this charging conference, the plaintiff did not object to this charge, nor did the defendant formally withdraw his request for this jury instruction. Therefore, the court read the standard charge to the jury on assumption of the risk. (See N.T. 12/17/2002 pp. 54-55.) After the court read the substance of its instructions, the court asked whether either party wanted to see the court at sidebar. *Id.* at 68. At this point, counsel for the plaintiff objected to the assumption of the risk charge, asserting that they had recently given a written objection to the court's clerk. *Id.* at 68-69. The court then asked both counsel how it wanted the court to respond, as demonstrated by the following dialogue:

"The Court: What would you like me to do?

"Ms. Stein: I think you need to tell the jury that [assumption of the risk] doesn't apply in this case.

"The Court: Okay.

"Ms. Stein: Tell them what you read them and they can disregard that, that that defense is not available to the defendant in a negligence case." *Id.* at 72-73.

Whereupon the court issued the following curative instruction.

"The Court: Ladies and gentlemen, in order to complete my charge, I need to inform you of certain things.

"Number one, when I charged you on assumption of the risk, that does not apply in this case under the facts

and under the decisions that I have already made, so you are just to take that part out of the case." *Id.* at 73.

The plaintiff complains that no curative instruction was given as requested. This court disagrees. The record clearly demonstrates that a curative instruction was given, that instruction was consistent with plaintiff's request, and it was sufficient to apprise the jury that they were to disregard the assumption of the risk doctrine. It was only after the jury was sent back into the deliberation room that plaintiff's counsel stated that she wanted to "place an exception on the record" with respect to the sufficiency of the court's curative instruction. *Id.* at 74-75. Specifically, she stated that she wanted the court to re-read the assumption of the risk instruction and then tell the jury to disregard it. This court believes that this objection was untimely. Moreover, rereading the assumption of the risk instruction was unnecessary, repetitive, and such repetition may even have been prejudicial to the plaintiff. Accordingly, this claim is without merit.

## THE COURT DID NOT ERR IN ITS INSTRUCTION TO THE JURY ON SUBSTANTIAL FACTOR

Next, the plaintiff argues that the charge on substantial factor was flawed and erroneous because the charge failed to include the fact that there can be more than one substantial factor. In support of this argument, the plaintiff at trial referred the court to the following two cases: *Craft v. Hetherly,* 700 A.2d 520 (Pa. Super. 1997), and *Kruczkowska v. Winter,* 764 A.2d 627 (Pa. Super. 2000).

In *Kruczkowska,* a bicycle rider was injured when she collided with an automobile because the automobile pulled out onto the roadway without first looking to see

if the path was clear. The jury found that the automobile driver was negligent but that her negligence was not a substantial factor in bringing about her injuries. When the trial court denied post-trial motions, the Superior reversed, holding that the jury's determination that the car driver's negligence was not a substantial factor bore no rational relationship to the evidence adduced at trial.

The Superior Court summarized its holding in *Craft* as follows:

"In *Craft,* the plaintiff and defendant were involved in a motor vehicle accident. At trial, both parties presented expert medical testimony regarding the nature of plaintiff's injuries. The medical experts testified that plaintiff was injured as a result of the accident and differed only with regard to the severity and duration of the injuries. In response to interrogatories, the jury found the defendant was negligent in causing the accident, but found that the negligence was not a substantial factor in causing plaintiff's injuries. On appeal, [the Superior Court] affirmed the trial court's grant of a new trial based upon its finding the verdict was against the weight of the evidence." See *Kruczkowska* at 629.

At trial, this court addressed the plaintiff's substantial factor argument as follows:

"The Court: Well, it doesn't talk about two substantial factors. And if I feel that the jury has a right to determine whether or not Mr. Santiago's negligence was a substantial factor in causing the accident. Where does it talk about two substantial factors or superseding substantial factor?

"Ms. Stein: Well, judge, there is—frankly, the jury can decide that there are two substantial factors and one of

the substantial factors, whether it be Mr. Santiago or Mr. Bishop, was more negligent than the other.

"Ms. Love: Right.

"The Court: That's what I just asked you.

"Ms. Stein: Yes, I believe that they can.

"The Court: But where does it say that? I was looking for language saying that there can be two substantial factors." (N.T. 12/17/2002 pp. 36-37.)

Contrary to plaintiff's assertion, neither *Craft* nor *Kruczkowska* stand for the proposition that there must be two substantial factors where both parties are negligent. Furthermore, the court ruled as a matter of law that the defendant's negligence was a substantial factor and left it up to the jury to determine whether or not the plaintiff's negligence, if any, was also a substantial factor. Therefore, the issue of one or more substantial factor is not a real issue in this case. The jury concluded that both parties committed negligence that rose to a substantial factor in bringing about the harm. Therefore, the issue is simply that of comparative negligence. Accordingly, the court did not err in its instruction to the jury on substantial factor.

## THE COURT DID NOT ERR IN ITS CHARGE TO THE JURY CONCERNING THE DIRECTED VERDICT

Finally, the plaintiff complains that the trial court erred in "granting a directed verdict to defendant limited to speeding only" because such an instruction "was a misstatement of the law, confusing and erroneous, leading the jury to conclude that defendant had not breached other duties contrary to the evidence and law."

It should first be noted that the court granted a directed verdict in favor of the plaintiff—not the defendant. The court instructed the jury that because of the defendant's admitted speed violation, the defendant, as a matter of law, was negligent and that that negligence was a substantial factor in bringing about the plaintiff's harm. (N.T. 12/18/2002 p. 51.)

This instruction was clearly not a misstatement of the law. Whether the defendant breached any other duties was irrelevant to the issue of a directed verdict and was a matter for the jury. Plaintiff fully argued this to the jury and the charge by the court supported that argument. The plaintiff was not entitled to a directed verdict on defendant's negligence greater than the one received. Accordingly, the court did not err in its charge to the jury on the directed verdict and for all the foregoing reasons, the instant appeal should be denied.