Robert BEY and Diane Bey,
h/w, Appellees,

v.

Fred SACKS, D.D.S., Stanley N. Dubin,
DMD and Modern Dental
Concepts, Appellants.

Robert Bey and Diane Bey, h/w,

v.

Mitchell Blumenthal, DMD &
Associates, t/a Modern
Dental Concepts.

Appeal of: Fred Sacks, D.D.S.

Superior Court of Pennsylvania.

Argued May 31, 2001.
Filed Dec. 14, 2001.

Thomas A. McCormack, Philadelphia, for Sacks, appellant.

Brian C. Hall, Philadelphia, for appellees.

Before EAKIN, MUSMANNO, and TODD, JJ.

TODD, J.

¶ 1 Fred Sacks, D.D.S. ("Dr.Sacks") appeals from the judgment entered by the Honorable Norman Ackerman of the Philadelphia County Court of Common Pleas

on December 21, 2000 in favor of Appellees, Robert and Diane Bey ("the Beys"), following a jury trial. Following our review of the trial record before us, we affirm.

¶ 2 The Beys filed two separate dental malpractice lawsuits against several defendants, including Dr. Sacks, alleging various claims of professional negligence and lack of informed consent, as well as a derivative loss of consortium claim on behalf of Diane Bey. Before trial, the actions were consolidated and certain parties were dismissed. At the conclusion of the trial, the jury returned a verdict in favor of all defendants on the claims of professional negligence, but in favor of the Beys and against Dr. Sacks on the claims of lack of informed consent and loss of consortium. The jury awarded Robert Bey compensatory damages of $400,000 and Diane Bey $200,000 for loss of consortium.

¶ 3 The record reveals the following relevant facts. On October 19, 1995, Robert Bey ("Mr.Bey") went to Modern Dental Concepts, Inc. ("MDC") complaining of a severe toothache. He was examined by a dentist who advised that his upper right second molar either required extraction or a root canal. Although Mr. Bey stated that he wished the tooth to be removed, the dentist was unable to perform the extraction that day because of infection. She prescribed antibiotics for him and requested that he return after several days. At trial, Mr. Bey testified that he returned to MDC the following day, although no indication of this visit appears in MDC's records. At that time, another dentist in the office referred him to Dr. Sacks, an oral and maxillofacial surgeon also employed by MDC, to have the molar removed.

¶ 4 Mr. Bey returned on October 26, 1995 and was examined by Dr. Sacks. Mr. Bey declined the root canal option and agreed to the extraction of the tooth. The record indicates that Mr. Bey filled out and signed a consent form before undergoing the procedure. Mr. Bey testified that he was in such excruciating pain that he did not recall whether any of the doctors explained that one risk of the extraction was facial pain due to nerve root irritation. Dr. Sacks extracted the tooth without incident. Mr. Bey did not return to MDC until December 2, 1995 with complaints of persistent, right-sided facial pain radiating into his head and eyes. On December 7, 1995, Mr. Bey again was seen by Dr. Sacks, who initially believed that he suffered from sinus problems and referred him to an ear, nose and throat specialist. Eventually, Mr. Bey was diagnosed with nerve root irritation secondary to the molar extraction performed by Dr. Sacks. After extensive medical treatment, including procedures and various medications, Mr. Bey's facial pain did not subside and he filed suit. Following a lengthy trial, the jury entered the aforementioned verdict in favor of the Beys.

¶ 5 Dr. Sacks timely filed post-trial motions requesting judgment notwithstanding the verdict or a new trial, or remittitur. Following briefs and oral argument, Judge Ackerman denied Dr. Sacks' motions and he timely appealed.

¶ 6 Dr. Sacks asks us to consider the following questions:

 A. IS DEFENDANT ENTITLED TO A NEW TRIAL, ON THE ISSUE OF INFORMED CONSENT, BECAUSE THE LOWER COURT ERRED IN PERMITTING PLAINTIFFS' EXPERT WITNESS, DR. MARVIN GROSS, TO TESTIFY BEYOND THE SCOPE OF PROPER TESTIMONY FOR AN EXPERT WITNESS FOR A CLAIM OF LACK OF INFORMED CONSENT?

B. IS DEFENDANT ENTITLED TO A NEW TRIAL, ON THE ISSUE OF LACK OF INFORMED CONSENT, BECAUSE THE LOWER COURT ERRED IN PRECLUDING DEFENSE COUNSEL FROM CROSS–EXAMINING PLAINTIFF ABOUT KNOWLEDGE OF RISKS AND ALTERNATIVES LEARNED FROM OTHER DENTAL PHYSICIANS FROM PREVIOUS DENTAL EXTRACTIONS?

C. IS DEFENDANT ENTITLED TO A NEW TRIAL, ON THE ISSUE OF LACK OF INFORMED CONSENT, BECAUSE THE LOWER COURT ERRED IN FAILING TO CHARGE THE JURY ON COMPARATIVE NEGLIGENCE?

D. IS DEFENDANT ENTITLED TO A NEW TRIAL, ON THE ISSUE OF LACK OF INFORMED CONSENT, AND/OR REMITTUR [SIC] BECAUSE THE JURY'S VERDICT IS SO EXCESSIVE THAT IT SHOCKS THE CONSCIOUS [SIC]?

(Appellant's Brief, at 4.) [1]

■ ¶ 7 Recently, in *Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000), our Supreme Court reiterated and redefined our appellate standard and scope of review of a trial court order granting or denying a new trial. There, the Court held each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis of the motion for a new trial. *Id.* at 467, 756 A.2d at 1122.

First, the trial court must follow a two-step process in responding to a request for a new trial. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. Second, if the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. *Id.* (citations omitted). A new trial is not justified simply because an irregularity occurred at trial or a different judge would have ruled differently. The moving party must prove that he or she has suffered some prejudice by the error. *Id.* (citations omitted). In the present case, the trial court reviewed Appellant's allegations of error and determined that no error had occurred.

■ ¶ 8 In *Harman*, the Court then set forth an additional dual-pronged analysis for our appellate review of a trial court's determination to grant or deny [2] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not made. *Id.* If the appellate court discerns that a mistake was made at trial, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial. *Id.* at 468, 756 A.2d at 1123.

■ ¶ 9 Our Supreme Court held in *Harman* that in applying the appropriate standard of appellate review of an order denying a new trial order, if the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. *Id.* The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly

1. In his Questions Presented, Appellant asks only for us to review his request for a new trial and, in contrast to his post-trial motions, does not seek review of the trial court's denial of his request for judgment notwithstanding the verdict.

2. The court specifically held that a review of a denial of a new trial requires the same analysis as a review of a grant. *Id.* (citations omitted).

unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. *Id.* at 469, 756 A.2d at 1123 (citations omitted). If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. *Id.* at 468, 756 A.2d at 1123. If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis.

■ ¶ 10 Furthermore, it is axiomatic that "we must consider, viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different verdict." *Gunn v. Grossman,* 748 A.2d 1235, 1239 (Pa.Super.2000) (citation omitted). Moreover, we consistently have held that if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 635 (Pa.Super.1997). With these principles in mind, we shall examine the propriety of the trial court's denial of the relief requested by Dr. Sacks.

¶ 11 Dr. Sacks first argues that he is entitled to a new trial on the issue of informed consent because the trial court erred in permitting the Beys' expert witness, Dr. Marvin Gross, to testify beyond the proper scope of expert testimony for a claim of lack of informed consent. Dr. Sacks alleges that he was prejudiced by Dr. Gross' testimony, during questioning by the Beys' counsel, that nerve root irritation in the extraction of a tooth is a significant and material risk of the procedure and that such testimony was outside the permissible bounds of testimony for an expert witness in informed consent cases.

■ ¶ 12 The Beys assert in response that Dr. Sacks has waived this claim be-

cause he failed to make appropriate objections at trial, as well as in post-trial motions. Our review of the record, the trial transcript, as well as the post-trial motions, leads us to conclude that Dr. Sacks' counsel sufficiently objected prior to, during and after trial to the form, as well as the substance, of much of the testimony of Dr. Gross, as well as his expert report. In light of the extensive pre-trial and sidebar discussions among counsel and the court of the permissible limits of Dr. Gross' testimony, counsel's objections thereto, as well as specific objections raised in Dr. Sacks' brief in support of his post-trial motions (Appellant's Brief in Support, at 6, 13), we find that Dr. Sacks sufficiently raised and preserved his objections on the record. Accordingly, we will review Dr. Sacks' allegation of trial court error on the merits.

¶ 13 Specifically, Dr. Sacks objects to the following exchanges between Dr. Gross and the Beys' counsel at trial:

Q: I'm asking you to describe for us the risks you consider to be material?

A: With a tooth extraction?

Q: Yes?

A: As I mentioned before, there are reactions to the local anesthetic or the general anesthetic if it's so used. Damage to a nerve. Post-operative discomfort, post-operative swelling following an extraction. In some instances possibly chronic pain associated in the area of the extraction site.

(N.T. Trial, 9/12/00, at 94.) Dr. Gross then testified to the following under further questioning by the Beys' counsel:

Q: Did you indicate the extent of the risk in the last sentence of that report, in the last sentence of that page, starting with nerve root irritation?

A: Yes. Do you want me to read it?

Q: Yes.

A: Nerve root irritation is a significant risk in the extraction of a maxillary tooth such as occurred here.

(N.T. Trial, 9/12/00, at 98.)

■ ¶ 14 Dr. Sacks argues that it was not Dr. Gross' role to express an opinion to the jury as to which risks associated with tooth extractions are or are not material or significant and that it was the jury's role, not the expert's, to determine the materiality of the risks after the expert testifies to the risks of the procedures, their probability of occurring and the alternatives available. (Appellant's Brief, at 12.) We disagree.

■ ¶ 15 This Commonwealth has adopted the prudent patient standard for informed consent. Under this standard, a physician must "advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation." *Southard v. Temple Univ. Hosp.*, 566 Pa. 335, ——, 781 A.2d 101, 106 (2001) (citation omitted). The goal of the informed consent doctrine "is to provide the patient with material information necessary to determine whether to proceed with the given procedure or to remain in the present condition." *Nogowski v. Alemo–Hammad*, 456 Pa.Super. 750, 762, 691 A.2d 950, 957 (1997) (*en banc*) (citation omitted).

¶ 16 Our careful review of the case law in this area leads us to conclude that it is not beyond the scope of permissible testimony for the Beys' expert to express the opinion that a risk is significant or material. Our Supreme Court previously has held that the question of what is a material risk is one for the jury. *Moure v. Raeuchle*, 529 Pa. 394, 405, 604 A.2d 1003,

1008 (1992). However, in making that determination, "the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring." *Id.* The jury must then determine if the type of harm and the probability that it may occur is information that a reasonable patient would consider in making the decision whether to undergo the medical procedure. *Id.*

¶ 17 In *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371 (1986), this Court reviewed the distinction between the need for expert testimony to establish a physician's standard of care on one hand and its use in proving a lack of informed consent under the reasonable patient standard on the other. *Id.* at 355, 511 A.2d at 1376. There, we held, in clarifying our prior holding in *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971), regarding the need for expert testimony in proving informed consent claims, that *Cooper* merely rejected the need for such testimony to establish the materiality of risks. We reaffirmed that determinations of what a reasonable man would do or consider significant within the context of a particular set of facts is "standard fare for jurors, for which they need no expert assistance." *Festa*, 354 Pa.Super. at 355, 511 A.2d at 1376 (citations omitted).

¶ 18 In *Cosom v. Marcotte*, 760 A.2d 886 (Pa.Super.2000), *overruled in part on other grounds by Southard*, 781 A.2d 101, we reiterated our holding with regard to the necessity of expert testimony to establish the risks and alternatives presented by a proposed surgical procedure:

In *Festa v. Greenberg, supra,* this court held that a plaintiff cannot prevail on an implied consent cause of action absent evidence of this kind. We recognized that Pennsylvania is one of a growing number of jurisdictions to adopt a "pru-

dent patient" standard of informed consent. This standard tests the adequacy of the physician's pre-treatment disclosures by requiring the fact finder to determine whether the patient received all of the information that a reasonable person would deem "material." We concluded in *Festa* that even though the ultimate assessment of "materiality" is for the fact finder to make, expert testimony is nevertheless necessary on the important secondary issues that lie outside the knowledge of the lay person.

781 A.2d 101 (footnote omitted) (citing *Neal v. Lu,* 365 Pa.Super. 464, 480, 530 A.2d 103, 111 (1987)).

¶ 19 We further note that Rule 704 of our Pennsylvania Rules of Evidence, adopted May 8, 1998, specifically permits expert testimony as to the ultimate issue in a case. This rule provides:

**Rule 704. OPINION ON ULTIMATE ISSUE**

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Pa.R.E. 704.

¶ 20 Although we agree with Dr. Sacks' contention that it is ultimately within the province of the jury or fact finder to determine materiality of a risk, we find no error in the trial court allowing the Beys' expert to testify as to his opinion whether the risk of nerve root irritation was a material risk of the tooth extraction and whether that risk was not explained fully to Mr. Bey before the procedure. It was then for the jury to determine, after weighing all the evidence presented, the materiality of the risks involved. Accordingly, Dr. Sacks' claim in this regard is without merit.

■ ¶ 21 Next, Dr. Sacks argues that the trial court erred in allowing the Beys'

expert to testify, based on his review of the deposition transcripts in the case, as to whether he believed that Dr. Sacks adequately had presented the risks or alternative procedures to Mr. Bey before he elected to have the tooth extracted. Dr. Sacks argues that the trial court's questioning of the expert on this subject was improper and prejudicial and clearly impacted the verdict. (Appellant's Brief, at 15.)

¶ 22 Our review of the testimony in question leads us to conclude that the court's inquiries were within the realm of legitimate direct examination. As the Beys properly point out in their brief, Dr. Gross testified regarding his review and recollection of the deposition transcripts, which were offered into evidence at trial. Any perceived deficiencies in his testimony could have been subject to cross-examination by Dr. Sacks' counsel. (Appellees' Brief, at 6). Furthermore, as Dr. Sacks has raised no challenge to the sufficiency of the jury instructions given in this case on this topic, and the transcript before us does not contain them, we must assume that the jury was given the standard charge instructing them to make credibility determinations after considering all the evidence. Accordingly, the trial court committed no error in admitting the expert testimony at issue.

■ ¶ 23 Dr. Sacks next argues that the trial court erroneously precluded his counsel from cross-examining Mr. Bey on his knowledge of risks and alternatives to the dental procedure that he had learned from previous dental extractions. Dr. Sacks maintains that the basis for an informed consent claim is the determination of whether the consent given by the patient is truly informed. Dr. Sacks argues that because a patient's consent cannot be considered to be informed if the consent was not given with a true understanding, the patient's prior knowledge of the proce-

dure gleaned from his past experience is relevant. (Appellant's Brief, at 19.)

¶ 24 At trial, when defense counsel attempted to cross-examine Mr. Bey about his previous numerous dental extractions, the trial court sustained objections to this line of questioning. Dr. Sacks now argues that the trial court's preclusion of this relevant testimony was prejudicial and Dr. Sacks' counsel should have been permitted to question Mr. Bey about his prior knowledge of the risks and alternatives involved as a result of his past experience with dental extractions. We disagree.

¶ 25 This case presents an unusual scenario for an informed consent claim in that ordinarily the plaintiff-patient previously has not undergone the same procedure. Neither counsel for the parties, nor Judge Ackerman in his Opinion of January 22, 2001, written pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), identified any case law in support of or against the proposition that evidence of Mr. Bey's prior knowledge regarding the same procedure was more probative than prejudicial. We decline, in the absence of far more compelling evidence than appears on the record before us, to attribute to Mr. Bey any pre-existing level or depth of knowledge or understanding of the risks of the procedure. *See Sauro v. Shea*, 257 Pa.Super. 87, 99, 390 A.2d 259, 264 n. 3 (1978) (holding, in a dental malpractice claim, that the decedent's consent was not necessarily valid simply because she recently had undergone similar procedures, the past procedures were more limited in scope than the one at issue, and no evidence was presented at trial regarding any specific information provided to decedent in connection with the past procedures).

¶ 26 Our further examination of this issue leads us to conclude that allowing testimony regarding the practices of other physicians with whom the plaintiff had come in contact very likely would confuse the jury as to the ultimate question— whether the physician **in the case at issue** properly informed the plaintiff of the risks and alternatives **to that procedure.** The Beys cite our holding in *Sagala v. Tavares,* 367 Pa.Super. 573, 533 A.2d 165 (1987), wherein we stated:

> the standard of care is not what a reasonable medical practitioner would have done in the situation but whether the physician disclosed those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment.

*Id.* at 577, 533 A.2d at 167 (citations omitted.) We further stated in *Sagala* that "evidence of professional standards incorrectly invites the jury to consider whether the physician acted in conformance with the customary practices of other physicians." *Id.* We agree with Mr. Bey's contention that permitting testimony regarding his previous discussions of risks and alternatives by other health professionals involved with earlier, unrelated dental procedures would invite the jury to confuse the standards by which they were to determine whether a lack of informed consent had occurred **in this case.** Therefore, the trial court committed no error in excluding this testimony.

¶ 27 Dr. Sacks next argues that the trial court erred in failing to charge the jury on comparative negligence. He argues that, based on our holding in *Montgomery v. Bazaz–Sehgal,* 742 A.2d 1125 (Pa.Super.1999) *appeal granted,* 563 Pa. 689, 760 A.2d 855 (2000), claims of lack of informed consent are now grounded in negligence, not battery.[3] The Beys argue,

---

**3.** We note that although our Supreme Court has granted review of this case, as well as

*Valles v. Albert Einstein Medical Center, infra,*

and the trial court properly held, that as of this date, Pennsylvania adheres to a battery standard for informed consent cases. *See Moure v. Raeuchle*, 529 Pa. 394, 404, 604 A.2d 1003, 1008 (1992). Although the question repeatedly has been raised as to whether to adopt a negligence standard for informed consent cases, our Supreme Court has declined to do so thus far. *See Valles v. Albert Einstein Medical Center*, 758 A.2d 1238, 1248 n. 12 (Pa.Super.2000) (*en banc*) (Del Sole. J., dissenting) *appeal granted*, 565 Pa. 649, 771 A.2d 1287 (2001); *see also Kelly v. Methodist Hospital*, 444 Pa.Super. 427, 432, 664 A.2d 148, 150 (Pa.Super.1995) (holding that an informed consent cause of action based on negligence does not constitute a viable cause of action in Pennsylvania). Dr. Sacks relies on *Montgomery v. Bazaz–Sehgal, supra*, contending that lack of informed consent claims in Pennsylvania now are "grounded in negligence, while claims of consent are grounded in battery." (Appellant's Brief, at 23.) Therefore, he argues, because under this interpretation a lack of consent claim is now considered to be under a negligence theory, a jury instruction on comparative negligence should have been given. We disagree.

¶ 28 In *Montgomery*, this Court alluded to the apparent distinction between informed consent cases grounded in negligence and those that are based on a battery theory. *Montgomery*, 742 A.2d at 1130. There, the plaintiffs brought a medical malpractice action alleging, based on both a lack of informed consent and negligence, that the surgeon had impermissibly expanded a surgical procedure to which the plaintiff had consented to one of vastly different outcome and magnitude. Based on those very different facts, this Court concluded that the case was one of battery "grounded on the lack of consent to the procedure itself, not a negligence case grounded on the act of inadequately advising the patient of the risks of or alternatives to the procedure (an 'informed consent' case)." *Id.* at 1131.

¶ 29 Dr. Sacks now argues that this Court's statement in *Montgomery* acknowledging the possible existence of an informed consent theory grounded in negligence supports the theory that he was entitled to a comparative negligence charge to the jury. However, in light of the significant volume of case law adhering to the battery theory of informed consent claims, until our Supreme Court holds otherwise, we decline to find that this lone statement grants Appellant license to proceed under a negligence theory of lack of implied consent.

¶ 30 Furthermore, the Beys assert that the dental procedure consented to, a surgical extraction of a tooth, was not the specific procedure that Dr. Sacks performed. Dr. Sacks actually performed a simple, not a surgical, extraction of the tooth. Accordingly, because Dr. Sacks did not obtain Mr. Bey's consent to the specific procedure performed, a battery analysis must be implemented. We also agree with this assertion and hold that the trial court committed no error in denying Dr. Sacks' request for a jury instruction on comparative negligence.

¶ 31 Finally, Dr. Sacks argues that he is entitled to a new trial or remittitur of the jury's verdict because it is shockingly excessive. He asserts that based on the factors to be considered in evaluating whether a verdict is excessive previously enumerated by this Court, we should find that the trial court abused its discretion in failing to grant a new trial or remittitur. Judicial reduction of a jury award for compensatory damages is appro-

as of this date, no decisions have been rendered.

priate only when the award is plainly excessive and exorbitant in a particular case. *Gunn v. Grossman,* 748 A.2d at 1240 (citations omitted). The proper question for our review is whether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption." *Id.* at 1241 (citations omitted). We previously have stated that six factors are to be considered in determining whether a verdict is excessive or exorbitant in light of the evidence at trial:

> (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; [and] (6) the amount of compensation demanded in the original complaint.

*Harding v. Consolidated Rail Corp.,* 423 Pa.Super. 208, 225–226, 620 A.2d 1185, 1193 (1993). However, because every case is unique, the trial court should apply only those factors which are relevant to the particular case in question before determining if the verdict is excessive. *Mineo v. Tancini,* 349 Pa.Super. 115, 126, 502 A.2d 1300, 1305 (1986), *aff'd,* 517 Pa. 335, 536 A.2d 1323 (1988).

■ ¶ 32 The trial court considered the verdict in the case before us in light of these factors and determined that the verdict "was fully supported by the evidence." (Trial Court Opinion, 1/22/01, at 12.) Following our review of the record before us, including the medical evidence and Mr. Bey's own testimony, we conclude that the jury reasonably could have credited the Beys' evidence and arrived at the verdict. Sufficient evidence was presented at trial to support the jury's award and neither a new trial nor remittitur was appropriate. The Beys presented extensive evidence, which the jury was free to believe, regarding Mr. Bey's protracted pain and suffering, as well as the psychological impact therefrom. They further presented expert testimony to support a wage loss claim, which Mr. Bey claimed was a result of his inability to work after the injury, that far exceeded the jury's award. Dr. Sacks' objection to the amount of the verdict amounts to a challenge to the jury's credibility determinations at trial. As an appellate court, we are not at liberty to challenge those credibility determinations absent a complete lack of evidence supporting Appellees' claims. *Willard v. Interpool, Ltd.,* 758 A.2d 684, 688 (Pa.Super.2000). Accordingly, we agree with the conclusion of the trial court that the verdict should be upheld and find Dr. Sacks' contention to be without merit.

¶ 33 For all of the foregoing reasons, the judgment of the trial court is affirmed.

¶ 34 Judgment affirmed.